IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02175-MEH

CHRISTOPHER TUCK,

    Plaintiff,

v.

SHERIFF STEVEN D. NOWLIN, in his individual capacity;
LIEUTENANT JEFFREY COPELAND, in his individual capacity;
DETECTIVE JOHN HAYNES, in his individual capacity;
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA, in its official capacity,

    Defendants.

---

### DEFENDANTS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

---

Defendants SHERIFF STEVEN D. NOWLIN ("Nowlin"), LIEUTENANT JEFFREY COPELAND ("Copeland"), DETECTIVE JOHN HAYNES, and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA (the "BOCC") submit this Supplemental Reply in Support of their Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings ("MJP") (Doc. 34).

## BACKGROUND

Defendants filed their MJP on March 17, 2023 (Doc. 34). On April 22, 2023, Plaintiff filed his Response to Defendants' MJP ("Response to MJP") (Doc. 42), and on May 3, 2023, Defendants filed their Reply in Support of the MJP ("Reply ISO MJP") (Doc. 51). On May 1, 2023, Plaintiff filed a Motion for Leave to File a Second Amended Complaint ("2AC") (Doc. 48), after the

Scheduling Order's (Doc. 17) February 1, 2022, deadline to amend the pleadings had passed. On May 15, 2023, Defendants filed a Response in Opposition to Plaintiff's Motion for Leave to File a 2AC (Doc. 52).

On June 1, 2023, the Court issued an Order granting Plaintiff's Motion for Leave to File a 2AC ("Order") (Doc. 53) and accepted as filed the 2AC (Doc. 54). The Order also granted Defendants' alternative request for relief that the pending MJP remains an operative dispositive motion and that the parties be permitted supplemental briefing only as to the impact on the MJP, if any, because of new allegations in the 2AC. Order at p. 4.

On June 15, 2023, Plaintiff filed his Supplemental Opposition to the MJP ("Supp. Brief") (Doc. 55).

I.  REVIEW OF THE 2AC

    A.  Additional Allegations Set Out in the 2AC

Excluding Plaintiff's substitution of the BOCC for "Montezuma County," which Defendants do not oppose, Plaintiff's added allegations in his 2AC address the following five subject areas:

        1.  **Plaintiff Was Growing Unregistered and Unlicensed Hemp Rather Than Marijuana for "Phenotype Hunting" and Cancer Research**

- Plaintiff has a background in horticulture having grown flowers for many years. 2AC at ¶¶ 16, 34.
- Plaintiff was growing hemp, rather than marijuana, for personal "phenotype hunting" related to his "cancer research." *Id.* at ¶¶ 29–37, 132.
- Defendant Copeland confirmed that Plaintiff did not register for or have a license to grow marijuana or hemp. *Id.* at ¶¶ 110–11.
- The seized plants were not tested for THC levels. *Id.* at ¶ 132.

        2.  **Infrequency of Helicopter and Airplane Flyover of the Road R Property**

- It was rare to see or hear an airplane or helicopter over the property located at 26959 Road R, Dolores, Colorado ("Road R Property"), where Plaintiff was residing. *Id.* at ¶ 28.

### 3. Resolution of the Drone Camera

- The image size of drone camera photographs are 4000 x 3000. *Id.* at ¶¶ 51–52.

### 4. Further Description of Characteristics of the Road R Property

- The property included a "cable" gate that controlled access to the property. *Id.* at ¶ 23.
- A boat was kept within 55 feet and a pool was kept within 45 feet from the house. *Id.* at ¶¶ 73–74.
- Trees and sagebrush grew around both marijuana gardens obstructing their being viewed. *Id.* at ¶¶ 21, 72.

### 5. Further Custom, Policy, and Practice (*Monell*) Allegations

- Defendants Nowlin, Copeland, and the BOCC failed to train their officers pursuant to the Montezuma County Sheriff's Office ("MCSO") Policy 605 on Unmanned Aerial Surveillance Operations and additional provisions in Policy 605. *Id.* at ¶¶ 154–55, 167–171, 173, 175.
- MCSO had previously conducted illegal warrantless drone searches. *Id.* at ¶¶ 146–49, 162–65.

## B. Plaintiff's Stated Significance of the Added Allegations

### 1. Expectation of Privacy

Plaintiff argues that the added allegations that he was growing hemp, albeit unregistered, rather than marijuana and that it was uncommon for helicopters or airplanes to fly over his property support his argument that he had an increased "expectation of privacy" regarding his "cannabis" gardens. Supp. Brief at p. 3.

### 2. Resolution of the Drone Camera

Plaintiff argues that the added allegation regarding the drone camera's 4000 x 3000 resolution supports his argument that the drone flight used "advanced" imaging technology so as

to "intrude[] into a constitutionally protected area." *Id.* at p. 7.

### 3. Curtilage

Plaintiff argues that the added allegations regarding characteristics of the Road R Property (an additional gate, location of a boat and swimming pool, and trees and shrubs around the gardens) "[t]aken as a whole with his previous allegations demonstrat[e] the close proximity of his gardens to his home" and add to his position that his "cannabis" gardens were within "the curtilage of his home." *Id.* at p. 5.

### 4. Probable Cause for Warrant

Plaintiff argues that the added allegations that he was growing hemp, although unregistered, rather than marijuana are material to his claims for securing an invalid search warrant. *Id.* at pp. 10–11.

### 5. *Monell* Claims

Plaintiff argues that the added allegations that Defendants failed to train their officers pursuant to Policy 605 and that the MCSO had previously conducted illegal warrantless drone searches support his argument that Defendants "maintained unconstitutional customs, policies, and practices" and acted with "deliberate indifference." *Id.* at pp. 13–14.

## ARGUMENT

**II. THE ADDED ALLEGATIONS IN THE 2AC DO NOT MATERIALLY IMPROVE PLAINTIFF'S ARGUMENTS IN OPPOSITION TO DEFENDANTS' MJP**

    **A. Plaintiff Has No Reasonable Expectation of Privacy from Drone Observations of the Road R Property from Airspace Where the Drone Did Not Fly Within the Road R Property's Superadjacent Airspace or Otherwise Disturb Its Quiet Enjoyment**

        **1. Defendants' Argument in the MJP**

Defendants argued in their MJP that longstanding United States Supreme Court

("SCOTUS"), Colorado, and other appellate authority establish that a property owner does not have a reasonable expectation of privacy from observations made from airspace – with the possible exception of observations by aircraft that enter the property's superadjacent airspace or are otherwise conducted in a manner that disturbs the quite enjoyment of the property.[1] MJP at pp. 12, 15. If Plaintiff did not have a reasonable expectation of privacy regarding the subject drone flight, Defendants argued, then the drone flight was not a Fourth Amendment search and his claims, which are all premised on an unconstitutional search, must be dismissed. *Id.* at p. 16.

As a separate but associated argument, Defendants argued that many of the drone photographs of the marijuana gardens were taken from locations not over the Road R Property but instead over public property or from private property other than the Road R Property. *Id.* at p. 5. Defendants argued that, even if the photographs taken over the Road R Property were excluded, the remaining photographs established probable cause that Plaintiff was illegally growing marijuana. *Id.* at p. 15.

### 2. Consideration of Plaintiff's Added Allegations

The added allegations regarding expectations of privacy that bear on this issue are that Plaintiff, without registering or obtaining a license, was growing hemp rather than marijuana for cancer research; that aircraft rarely flew over the Road R Property; and that the drone camera took

---

[1] Defendants cited, in part: *California v. Ciraolo*, 476 U.S. 207 (1986) (SCOTUS determined that the defendant did not have a reasonable expectation of privacy from police aerial view, from a private plane flown over his property, of illegal cultivation of marijuana plants within the curtilage of his home); *Florida v. Riley*, 488 U.S. 445 (1989) (SCOTUS held that a helicopter flight at an altitude of 400 feet over an individual's greenhouse to observe marijuana plants was reasonable under the Fourth Amendment, despite the fact that Federal Aviation Administration regulations require fixed-wing-aircraft to be operated at a minimum altitude of 500 feet); *Henderson v. People*, 870 P.2d 383 (Colo. 1994) (law enforcement's observation of marijuana plants in a defendant's yard from a helicopter was not considered a search under either United States or Colorado Constitutions due to the limited degree of intrusiveness).

photographs with a resolution of 4000 x 3000. Plaintiff argues that these allegations further support his expectation of privacy in his "cannabis" gardens, as they go to the "subjective expectation of privacy" component of the two-part test set out in *Katz v. United States*, 389 U.S. 347, 360–61 (1967), to determine whether a person has a "constitutionally protected reasonable expectation of privacy." Supp. Brief at p. 6. As to this test, a court is to consider: "(1) whether the individual has manifested a subjective expectation of privacy in the object or place to be searched; and (2) whether that expectation is one society is prepared to recognize as reasonable." *Reeves v. Churchich*, 484 F.3d 1244, 1254 (10th Cir. 2007).

### i. Hemp Grow Rather Than Marijuana

Even accepting as true Plaintiff's allegation that he was, for cancer research,[2] growing hemp rather than marijuana, this allegation is immaterial to Defendants' argument that Plaintiff did not have a reasonable expectation of privacy from aerial observations of his property. That is because SCOTUS and the Colorado Supreme Court have already determined, under the second part of the *Katz* test, that society does not recognize a reasonable expectation of privacy preventing government aerial views of private property – with the possible exception of aerial views that intrude on a property's superadjacent airspace or otherwise unreasonably interfere with the quiet enjoyment of the property. *See* MJP at pp. 8–11.

The constitutional analysis regarding the drone flight here does not, then, turn on whether Plaintiff was growing marijuana, hemp, or rhubarb. Indeed, in *Ciraolo*, SCOTUS found that Ciraolo did not have a reasonable expectation of privacy regarding his marijuana grows, even

---

[2] Defendants contest Plaintiff's "newly discovered" evidence that he was growing hemp for cancer research but accept the allegation as true for purposes of this supplemental reply in support of the MJP.

6

though he had a subjective expectation of privacy in the curtilage of his home where he was cultivating marijuana. 476 U.S. at 214. So too, in *Riley*, SCOTUS held that Riley did not have a reasonable expectation of privacy, even though his marijuana cultivation was in a greenhouse located in the curtilage of his home. 488 U.S. at 450. The Court observed that Riley "no doubt intended and expected that his greenhouse would not be open to public inspection," including by taking precautions to protect it "against ground-level observation." *Id.*

As in SCOTUS' findings in *Ciraolo* and *Riley* and the Colorado Supreme Court's finding in *Henderson*, Plaintiff does not have a constitutionally reasonable expectation of privacy regarding aerial surveillance of the Road R Property. As such, the subject drone flight was not a search for purposes of the Fourth Amendment.

### ii.     Frequency of Aircraft Flights

Plaintiff's added allegation regarding the rarity of aircraft flights over the Road R Property, likewise, has no material bearing on Defendants' arguments in their MJP that the drone flight did not constitute a Fourth Amendment search. Although the significance of these allegations or this issue is not explored in Plaintiff's supplemental brief, Plaintiff may be referring to *dicta* in *Riley* in which SCOTUS noted, as to the helicopter's flight, that there was "nothing in the record or before us to suggest that helicopters flying at 400 feet are sufficiently rare in this country to lend substance to respondent's claim that he reasonably anticipated that his greenhouse would not be subject to observation from that altitude." *Id.* at 451–52. As is obvious from *Riley*, the Court was not concerned with whether it was rare for a helicopter to fly over the particular subject property but, rather, whether it was "sufficiently rare *in this country*" that helicopters flew at 400 feet. *Id.* (emphasis added). Plaintiff does not, and could not, plausibly allege that drone flights flying at over 400 feet in this country are rare.

### iii. Photographs Taken from Locations Not Over Plaintiff's Property

The additional allegations in Plaintiff's 2AC do not further address Defendants' argument that many of the photographs of the marijuana gardens were taken from locations not over the Road R Property but over public property or other private property. Defendants' argument that, even if the photographs taken over Plaintiff's property were excluded, the remaining photographs established probable cause that Plaintiff was illegally growing marijuana, then, is unaffected.

### B. Drone Camera Resolution

Plaintiff's allegation in the 2AC that the drone camera had a resolution of 4000 x 3000, which he suggests is unusually "high definition," and that an image size of 1280 x 720 "is commonly used in photography and film," Supp. Brief at pp. 6–7, is simply not correct. This Court may take judicial notice that 4000 x 3000 is a reference to pixel density as measured by dots or pixels per inch ("dpi" or "ppi") on a vertical and horizontal plain. While resolution is affected by many things on a digital camera other than the camera sensor (such as quality of lens), the measurement of pixels is a useful measure as to the potential quality of a digital image. Total pixels in an image of 4000 x 3000 is 12,000,000 pixels. A mega pixel ("MP") is 1,000,000 pixels. For brevity, a camera that produces an image of 12,000,000 pixels would be said to be a 12MP camera. *See* Jason Polak, *What Are Megapixels and How Many Do You Need?*, PHOTAGRAPHYLIFE, https://photographylife.com/what-are-megapixels-how-many (last updated April 21, 2022).

In comparison to the drone used here, Apple's iPhone 14 Pro features a "48MP Main Camera" with an "Ultra Wide Telephoto" lens. *See iPhone 14 Pro*, APPLE, https://www.apple.com/iphone-14-pro/ (last visited June 27, 2023).[3] In addition to the much higher

---

[3] There are much higher mega pixel cameras on the open market, though with a high

8

resolution of the iPhone 14 Pro compared to the drone, the iPhone has optical zoom capabilities not alleged to be present on the subject drone.[4]

Even if the drone used enhanced imagery, which it did not, as stated in Defendants' MJP, magnification technology does not change the Fourth Amendment calculus as SCOTUS and other courts have long upheld law enforcement's use of magnification technology.[5] MJP at pp. 14–15. This includes magnification technology in aerial observations.[6]

### C. Defendants Had Probable Cause to Secure the Search Warrant of the Road R Property

Plaintiff also argues that the additional allegations in the 2AC that he was growing hemp for cancer research "provide additional support for his claim of invalid search warrants against

---

price-point. Both the Hasselblad H6D-400c and Fujifilm GFX 100 can produce 400MP images based on a 100MP sensor and use of pixel shift technology. Usman Dawood, *Fujifilm Pixel Shift Versus Hasselblad Multi-Shot: 400-Megapixel Files Compared*, FS STOPPERS (June 15, 2021), https://fstoppers.com/reviews/fujifilm-pixel-shift-versus-hasselblad-multi-shot-400-megapixel-files-compared-567223.

[4] There are, and have been for decades, commercially available optical telephoto lenses to allow long-distance photography. Optical zoom on a digital camera creates a long-distance digital image without degrading the image. Digital zoom, however, is the process where an image is increased in size or cropped from the original digital image, thus degrading the original digital image. Polak, *What Are Megapixels and How Many Do You Need?*, *supra.*

[5] *U.S. v. Lee*, 274 U.S. 559, 563 (1927) (SCOTUS approved the use of "searchlights" or a "field glass" to help law enforcement see what is on the deck of a ship); *U.S. v. Lopez-Ortiz*, 492 F.2d 109, 111 (5th Cir. 1974) (use of binoculars); *U.S. v. Bassford*, 601 F. Supp. 1324 (D. Me. 1985), *judgment aff'd*, 812 F.2d 16 (1st Cir. 1987) (use of binoculars to enhance view of marijuana plot was lawful). Colorado has made similar decisions regarding enhanced visual technology. *See People v. Oynes*, 920 P.2d 880, 883 (Colo. App. 1996) (marijuana identified in window of home from three hundred yards away using binoculars not an unconstitutional search); *Sundheim v. Bd. of Cnty. Cmm'rs*, 904 P.2d 1337 (Colo. App. 1995) (investigator's use of a "telescopic" camera lens to view activities on private property did not constitute a search).

[6] *Dow Chemical Co. v. U.S.*, 476 U.S. 227 (1986) (SCOTUS' holding that use of aerial mapping camera allowing extreme image magnification to photograph Dow's facility was not unreasonable).

Defendant Copeland." Supp. Brief at p. 10. This argument is unavailing. First, Plaintiff's Second and Third Claims for Relief against Defendant Copeland for violation of the United States and Colorado Constitutions were not amended in the 2AC and are solely based on the allegation that "[w]ithout the information obtained from the unlawful drone search, the warrant was invalid." 2AC at ¶¶ 204, 214. Similarly, although not raised by Plaintiff in his Supp. Brief, his Fifth Claim for Relief for Malicious Prosecution was solely based on the same allegation. *Id.* at ¶ 235. As such, Defendants correctly argued that all of Plaintiff's claims "were premised on his allegation that the drone flight was an unconstitutional warrantless search." MJP at p. 8. Plaintiff conceded this point in his Response to MJP, stating:

> Assuming the court finds Defendants' drone surveillance constituted a search under either state or federal law, Mr. Tuck's corresponding claim of invalid search warrant against Copeland should prevail. Mr. Tuck sufficiently alleged that without the information obtained from the illegal drone search, [the] warrant [] was facially invalid and cannot demonstrate probable cause.

Response to MJP at p. 19.

Similarly, in defense of his malicious prosecution claim, Plaintiff argued that he "sufficiently alleged Defendants knowingly provided false, fabricated, or omitted material information to initiate legal process against Mr. Tuck. Each defendant was personally involved in the illegal drone search of plaintiff's property." *Id.* at p. 24. As such, Plaintiff has not pled that the warrant was wrongly procured because Defendant Copeland or any other Defendant failed to rule out, before getting the warrant, that Plaintiff was growing hemp rather than marijuana.

Second, Plaintiff's claim fails even if it were premised on the issue of whether Plaintiff was growing hemp. Plaintiff concedes that, prior to securing the warrant, Defendant Copeland "searched Mr. Tuck's address with the Department of Agriculture and [found] it was not listed as registered for hemp cultivation." 2AC at ¶ 110. Thereafter, Defendant Copeland "had the property

10

researched by the Colorado Bureau of Investigation ("CBI") Marijuana Enforcement Division, who found no license for [Plaintiff] for [a] 'Caregiver Cultivation Association.'" *Id.* Further, Defendant Copeland:

> met with CBI Marijuana Enforcement Division Agent Jeff Brown, who checked with other sources of information available only to the CBI Marijuana Enforcement Division . . . who confirmed that Mr. Tuck, nor the property were registered with the Department of Agriculture for hemp cultivation, or the Marijuana Enforcement Division for commercial marijuana cultivation.

*Id.* at ¶ 111.[7]

The Colorado Supreme Court in *People v. Cox*, 429 P.3d 75, 76 (Colo. 2018), upheld a search warrant to search a property for an illegal marijuana grow even where the affidavit for the warrant failed to mention that the property owner was "a registered and regulated hemp farmer." Certainly, the Colorado Supreme Court would find enforceable the search warrant here, where the affidavit set out in detail the efforts made to determine if the suspected marijuana grow was hemp.

It is difficult to envision what else Defendant Copeland could have done to investigate whether Plaintiff's cannabis grow was hemp, as he could not enter the property to test the plants without a warrant. Even if it is true that Plaintiff was growing hemp for cancer research, he can look to no one but himself for having not registered for such hemp grow as is required by Colorado law. *See* C.R.S. § 35-61-104.

### D.   Curtilage

Plaintiff's additional allegations regarding a "cable gate" controlling access to the property, a boat and pool located close to the house, and trees and shrubs growing around the marijuana

---

[7]   This Court may take judicial notice of the warrant and affidavit supporting the warrant attached as **EXHIBIT D**. As set out in the affidavit, Defendant Copeland advised the Court of his efforts to eliminate Plaintiff as growing hemp or legal marijuana. Ex. D at Defendants' Bates 000223–000231.

gardens do not, as added to his prior allegations on this issue, establish that the marijuana gardens were in Plaintiff's curtilage.

Defendants repeat their argument from Section II, A above: if Plaintiff did not have a reasonable expectation of privacy regarding the subject aerial observation, then it matters not whether the marijuana gardens were or were not within the curtilage. Further, if the marijuana gardens were not in the curtilage, then the open fields doctrine bars Plaintiff's allegation of a Fourth Amendment unreasonable search violation. *See Oliver v. United States*, 466 U.S. 170, 180 (1984).

As Defendants argued in their MJP, Plaintiff has failed to establish plausible allegations that the cannabis gardens were in or used for intimate activities of the home. MJP at p. 13. Rather, they are not separately fenced as part of the intimate area around the home. Plaintiff's allegations that the gardens are in a location in which trees and shrubs limited ground visibility does not help his argument but, rather, demonstrates that the gardens are in a location more correctly considered an open field.

The proximity of a boat or a portable swimming pool to the house does also not materially assist Plaintiff in his curtilage argument.[8] Rather, the question is whether the cannabis gardens are so intimately associated with the home that it deserves the same constitutional protection as the home.

### E. Qualified Immunity

---

[8] "[C]urtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver*, 466 U.S. at 180. And a curtilage line cannot be located merely by measuring the distance separating the home and the area searched. *United States v. Redmon*, 138 F.3d 1109, 1112 (7th Cir. 1998) (en banc). Also, for purposes of the open field doctrine, "[a]n open field need be neither 'open' nor a 'field' as those terms are used in common speech." *United States v. Dunn*, 480 U.S. 294, 304 (1987).

As noted in Defendants' Reply ISO MJP, Plaintiff wholly failed to address the issue of qualified immunity to the individual Defendants as to the federal claims. Reply ISO MJP at p. 10. It does not appear that Plaintiff's attempt to argue that these additional facts substitute for citation of a case with sufficient similarity established that the drone flight conducted by the Defendants was unconstitutional.

**F.   Custom, Practice, and Policy (*Monell* Claims)**

**1.   Plaintiff's Added Allegations**

The added allegations going to the issue of custom, policy, and practice ("*Monell*") that bear on this argument are:

- Defendants Nowlin, Copeland, and the BOCC failed to train their officers pursuant to MCSO Policy 605 on UAS Operations and describing additional provisions in the policy. 2AC at ¶¶ 154–55, 167–171, 173, 175.
- MCSO had previously conducted illegal warrantless drone searches. *Id.* at ¶¶ 146–49, 162–65.

**2.   Analysis**

None of the additional allegations address Defendants' argument that where there is no underlying constitutional violation, there is no *Monell* claim. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002). Where, as here, there is no clearly established law on the use of drone surveillance, *see* MJP at p. 9 (particularly where Fourth Amendment jurisprudence supports the constitutionality of such aerial surveillance), even if this Court were to now find Defendants' drone flight unconstitutional, a law enforcement agency is not obligated to teach their officers how to perform in a way that has not yet been declared unconstitutional.[9] *See Contreras ex rel. A.L. v.*

---

[9]   Defendants also contest Plaintiff's allegations that they willfully and repeatedly violated sections of Policy 605, which state, "UAS video surveillance equipment shall not be used: [t]o conduct random surveillance activities," and that "[u]se of vision enhancement technology (e.g., thermal and other imaging equipment not generally available to the public) is permissible in

*Dona Ana Cnty. Bd. of Cnty. Comm'rs*, 965 F.3d 1114, 1124 (10th Cir. 2020) (Carson, J., concurring in part and concurring in judgment) ("[T]he violated right in a failure to train case 'must be clearly established because a municipality cannot *deliberately* shirk a constitutional duty unless that duty is clear.'") (quoting *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017)). Moreover, violation of one's own policy does not have a constitutional dimension in and of itself. *See George v. Beaver Cnty.*, 32 F.4th 1246, 1250 (10th Cir. 2022) ("failing to follow prison policy is not a constitutional violation in and of itself").

Second, Plaintiff's allegation that Defendants' previous warrantless drone searches were unconstitutional is similarly conclusory. Plaintiff's 2AC fails to provide any details regarding these previous drone flights or how they were similar to the subject drone flight. Plaintiff also fails to allege that Defendants knew these previous drone flights were unconstitutional. Defendants find no existing precedent – and, in fact, the law indicates otherwise – clearly establishing that law enforcement's use of a drone flight is unconstitutional. *See* MJP at p. 16. As such, Plaintiff's *Monell* claims fail. *See Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (a municipal policymaker cannot exhibit deliberate indifference when that right has not yet been clearly established).

## CONCLUSION

Plaintiff's 2AC does not enhance his claims in any material way. On the basis of

---

viewing areas only where there is no expectation of privacy interest." First, Defendants' use of a drone flight over the Road R Property was not "random surveillance." *See* MJP at 2–3. Second, as stated in the MJP, the "zoom" technology Defendant Copeland is alleged to have used is simply enlarging the image on a computer – a technology generally available to the public. *See id.* at 14–15. Third, and most importantly, Defendants did then and continue to contest that Plaintiff had an expectation of privacy in the area surveilled. *See id.* at 12–14. Accordingly, it is clear Defendants did not "willfully" violate these Policy 605 sections.

Defendants' MJP and this Supplemental Brief, Defendants request that this Court enter dismissal as to all claims made in the 2AC and award such costs and fees as allowable.

                                                  Respectfully submitted,

Date:  June 28, 2023                            s/ Gordon L. Vaughan
                                                  Gordon L. Vaughan
                                                  Michaela S. Morrissey
                                                      VAUGHAN & DeMURO
                                                      111 South Tejon, Suite 545
                                                      Colorado Springs, CO 80903
                                                      (719) 578-5500 (phone)
                                                      gvaughan@vaughandemuro.com (e-mail)
                                                      mmorrissey@vaughandemuro.com (e-mail)
                                      ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

      I hereby certify that on this 28th day of June, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Helen Oh, Esq.**
helen@tyroneglover.com

**Tyrone Glover, Esq.**
tyrone@tyroneglover.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[None]

                                                  s/ Gordon L. Vaughan
                                                  Gordon L. Vaughan