IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02175-MEH

CHRISTOPHER TUCK,

    Plaintiff,
v.

SHERIFF STEVEN D. NOWLIN, in his individual capacity,
LIEUTENANT JEFFREY COPELAND, in his individual capacity,
DETECTIVE JOHN HAYNES, in his individual capacity, and
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTEZUMA, in its official capacity,

    Defendants.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion for Judgment on the Pleadings. ECF 34. After the Motion was filed, and after the parties had fully briefed the issue, the Court permitted Plaintiff to file a Second Amended Complaint ("SAC"). ECFs 53–54. The Court also directed the parties to update their briefs regarding the Motion to reflect the allegations in the SAC, which the parties have done, and held oral argument on the Motion. ECF 55 (Plaintiff); ECF 56 (Defendants); ECF 67 (Oral Argument Courtroom Minutes). I therefore review the Motion by analyzing the SAC. For the following reasons, the Court **grants** Defendants' Motion as to the federal law claims and **declines to exercise supplemental jurisdictio**n as to the remaining claims.

**PROCEDURAL BACKGROUND**

Plaintiff initiated this action on August 4, 2022. ECF 1. On December 19, 2022, Plaintiff filed an Unopposed Motion to Dismiss one of six claims for relief. ECF 24. That same month, the

Court granted the Motion and Defendants filed an Answer. ECFs 25–26. Plaintiff filed a First Amended Complaint with leave from the Court on February 2, 2023. ECFs 27–29. Defendants filed an Answer on February 23, 2023 and then the present Motion on March 17, 2023. ECFs 32, 34. Plaintiff filed his Response on April 22, 2023 and then Plaintiff moved for leave to file a second amended complaint on May 1, 2023. ECFs 42, 48. Defendants filed their Reply to the Motion for Judgment on the Pleadings on May 3, 2023, and an opposition to the Motion for Leave on May 15, 2023. ECFs 51–52. In granting the Motion for Leave to File a Second Amended Complaint, the Court directed the parties to file supplemental briefing on the Motion for Judgment on the Pleadings. ECF 53 at 4. Accordingly, Plaintiff filed a Supplemental Opposition to the Motion and Defendants filed a Supplemental Reply in support of their Motion. ECFs 55–56. After the Court set oral argument, each side filed a Notice of Supplemental Authorities. ECFs 65–66. On October 25, 2023, the Court held oral argument on the Motion. ECFs 64, 67.

## FACTS

For the purposes of this ruling, the Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in the SAC. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint's factual allegations are "accepted as true" for purposes of Fed. R. Civ. P. 12(b)(6) analysis); *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011) ("We use the same standard when evaluating 12(b)(6) and 12(c) motions." (internal citation omitted)).

Plaintiff owns twenty-three acres in a "rural, . . . secluded area" near Dolores, Colorado. ECF 54 ¶¶ 15, 17. It is "fully enclosed with a fence on almost all parts of [the] property." *Id.* ¶ 17. "During the week of August 15, 2020, a confidential informant ('CI') who lived" nearby advised Defendant Copeland, a sheriff's deputy, that the informant believed "large amounts of marijuana

2

were being unlawfully cultivated from two possible directions or properties," including Plaintiff's property. *Id.* ¶¶ 38–40. The informant stated that "when the wind blew from the direction of these properties, it smelled of marijuana." *Id.* ¶ 41.

Defendant Copeland then "observed the two properties from the public roadway." *Id.* ¶ 42. On the first property (not Plaintiff's), Defendant Copeland "observed a greenhouse" containing six marijuana plants sticking out of the top. *Id.* ¶¶ 40, 43. Plaintiff alleges that Defendant Copeland did not see marijuana plants (or anything illegal) on Plaintiff's property, nor did he "smell marijuana coming from [Plaintiff's] property." *Id*. ¶¶ 44, 47.

On August 24, 2020, Defendant Copeland, along with Defendant Haynes, conducted a drone flight over Plaintiff's property using a Montezuma County Sheriff's Office ("MCSO") drone. *Id.* ¶¶ 48, 50. Defendant Haynes piloted the flight. *Id*. ¶ 54. He and Defendant Copeland launched the drone from the informant's property with the informant's consent. *Id*. ¶ 55. Defendants Copeland and Haynes plotted the path of the drone "to circle above and around [Plaintiff's] property from around 390 feet above the ground." *Id.* ¶ 56. The drone took at least twenty aerial photographs of Plaintiff's property, and the flight lasted approximately seven minutes. *Id*. ¶¶ 61–66. The SAC includes a satellite image superimposing the flight path of the drone and delineating the property lines of Plaintiff's property. *Id.* at 10–11. That imagery shows the flight of the drone directly over Plaintiff's property, and Plaintiff so alleges. *Id.* at 10–11; *id.* ¶ 58. It also shows a substantial duration of the flight adjacent to, but not directly over, Plaintiff's property. *Id.* at 10–11. Plaintiff also alleges that most, but not all, of the twenty photographs were taken while the drone was over his property. *Id.* ¶ 62.

Defendant Haynes provided Defendant Copeland with the photographs the drone took, which Defendant Copeland reviewed on a computer. *Id*. ¶ 67. Viewing the photographs on the

3

computer, "Defendant Copeland saw what appeared to be marijuana plants growing in two small gardens on [Plaintiff's] property." *Id.* ¶ 68. "[B]etween August 27, 2020, and October 6, 2020," Defendant Copeland used these photographs and "submitted four search warrant affidavits for [Plaintiff's] property." *Id.* ¶ 78. County Judge JenniLynn Everett Lawrence authorized all four search warrants. *Id.* The first three of these search "warrant affidavits contained material misrepresentations." *Id.* Of these three purportedly defective warrants, only one was served. *Id.* ¶¶ 97, 129. Thus, a total of two search warrants were executed. *Id.* ¶ 78. I note that in the SAC, Plaintiff does not appear to address the non-defective search warrant that was executed. ECF 54.

Plaintiff alleges the first two search warrants (search warrants 20-58 and 20-59) were "largely the same" [*id.* ¶ 98] and each lacked probable cause [*id.* ¶¶ 94, 109] because (1) "[t]here was nothing in the affidavit concerning Defendant Copeland's personal knowledge of the facts upon which the informant based their information." [*id.* ¶ 90; *cf. id.* ¶ 100]; (2) "[n]owhere in the affidavit did Defendant Copeland state that he smelled marijuana coming from [Plaintiff's] property" [*id.* ¶¶ 88, 102]; (3) "Defendant Copeland intentionally misrepresented that the drone flew *outside* the *home's curtilage and property* to take still photos of the property" [*id.* ¶ 84 (emphasis in original); *cf. id.* ¶ 103]; and this "intentional misrepresentation was material," Plaintiff asserts, because if Defendant Copeland "had admitted that the drone trespassed without a warrant on [Plaintiff's] property, it would have *vitiated probable cause*" [*id.* ¶ 93 (emphasis added); *cf. id.* ¶ 108].

While the first search warrant affidavit (no. 20-58) did not assert that "prior to conducting the drone search, [Defendant Copeland] observed what he believed to be marijuana plants on [Plaintiff's] property, or any illegal activity" [*id.* ¶ 89], the second (no. 20-59) similarly did not state that Defendant Copeland "observed what he believed to be marijuana plants on [Plaintiff's]

4

property, or any illegal activity" [*id.* ¶ 102]. Defendant Copeland also relied on the drone photographs for both search warrants, purportedly describing "illegal cultivation of around 210 total marijuana plants" in the first [*id.* ¶ 86], and "what appeared to be two marijuana gardens on the property" in the second [*id.* ¶ 104]. However, while he attached three photographs the drone took of Plaintiff's property to the first affidavit [*id.* ¶ 87], he attached none to the second [*id.* ¶ 105]. Defendants executed the second (no. 20-59) but not the first (no. 20-58). *Id.* ¶¶ 97, 113.

On September 2, 2020, Defendants executed the second search warrant (no. 20-59) on Plaintiff's property. *Id*. ¶ 113. During the search, Defendants Copeland and Nowlin, with other MCSO officers, "took photos of [Plaintiff's] property, seized samples of his plants, and destroyed his remaining marijuana plants." *Id*. ¶ 114. Plaintiff "was issued a summons for the unlawful cultivation of more than thirty marijuana plants, a class three drug felony in violation of C.R.S. 18-18-406." *Id.* ¶ 118.

After this execution, Defendant Copeland submitted a third search warrant (no. 20-60) on September 2, 2020 "based on the items earlier searched and seized from [Plaintiff's] property" which also purportedly included a "misstatement." *Id.* ¶¶ 122, 125–26. Judge Lawrence struck some items but authorized the warrant, permitting the search and seizure of computers and cell phones. *Id.* ¶¶ 123–24. Defendant Copeland did not execute this third search warrant. *Id.* ¶ 129.

Ultimately, Plaintiff "was prosecuted for the cultivation of more than thirty marijuana plants under C.R.S. § 18-18-406 (3)(A)(I)(III)(A), a level three drug felony." ECF 131. In that case, "Montezuma District Judge Todd Plewe granted [Plaintiff's] Motion to Suppress All Evidence" based on the warrantless search through the use of the drone. *Id.* ¶ 137. The judge also found "the officers did not act in good faith." *Id.* ¶ 138. The prosecution dismissed the criminal case on April 5, 2022. *Id.* ¶ 139.

Additionally, Plaintiff asserts Defendant Board of County Commissioners of the County of Montezuma has "policies, customs, or practices in conducting . . . warrantless drone searches"; however, it "failed to properly train, supervise, and/or discipline its employees regarding lawful searches . . . over private residences." *Id.* ¶¶ 221, 232.

Based on these factual allegations, Plaintiff brings the following claims: (1) a violation of Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 7 – Unlawful Entry and Search against Defendants Copeland, Haynes, and Nowlin; (2) a violation of Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 7 – Invalid Search Warrants/Unlawful Search against Defendant Copeland; (3) a Fourth Amendment violation under 42 U.S.C. § 1983 – Invalid Search Warrants/Unlawful Search against Defendant Copeland; (4) a Fourth Amendment violation under 42 U.S.C. § 1983 – Unconstitutional Customs, Policies, and/or Practices against Defendant Board of County Commissioners of the County of Montezuma; and (5) a Fourth Amendment violation under 42 U.S.C. § 1983 – Malicious Prosecution against all Defendants.

## **LEGAL STANDARDS**

Fed. R. Civ. P. 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Courts must evaluate a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings using the same standard for motions under Fed. R. Civ. P. 12(b)(6). *See Brown*, 662 F.3d at 1160 n.4 (internal citation omitted). The principal difference is that a Rule 12(c) motion is typically filed after the filing of an answer. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (internal citations omitted).

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Twombly* requires a two-prong analysis. *Id.* at 678.

First, courts must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are "legal conclusions," "bare assertions," or merely "conclusory." *Iqbal*, 556 U.S. at 678, 680–81. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action"; "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citation omitted).

Second, courts must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). It "refers to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)

7

(quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, "[w]hile the 12(b)(6) standard does not require that [a plaintiff] establish a prima facie case in [a] complaint, the elements of each alleged cause of action may help to determine whether [a plaintiff] has set forth a plausible claim." *Khalik*, 671 F.3d at 1191 (internal citations omitted).

## ANALYSIS

### I.   FOURTH AMENDMENT CLAIMS

#### A.   Qualified Immunity (Claims Three and Five)

Plaintiff's well-drafted arguments aside (concerning whether a search occurred), Defendants Copeland, Haynes, and Nowlin have raised qualified immunity as a protection from liability against Plaintiff's claims against them—Claims Three and Five. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted). The privilege "is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).

Traditionally, courts engage in a two-step sequence for resolving government officials' qualified immunity claims. *See Harris v. Mahr*, 838 F. App'x 339, 342 (10th Cir. 2020) (internal citation omitted). Courts decide whether (1) the facts that a plaintiff has alleged (as required by Fed. R. Civ. P. 12(c)) state the law enforcement officer's "actions violated a constitutional or statutory right" and (2) "the right was clearly established at the time of the officer's conduct." *Id.*

8

(internal quotations and citation omitted). Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *See Anderson v. Creighton*, 483 U.S. 634, 640 (1987).

"For a right to be clearly established, [its] contours . . . must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Harris*, 838 F. App'x at 342 (internal quotations and citation omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (internal quotations and citation omitted). "Plaintiffs typically must identify an on-point Supreme Court or published Tenth Circuit decision, but may also look to the weight of authority from other courts." *Harris*, 838 F. App'x at 342 (internal quotations and citation omitted); *see also Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) ("Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."). The "clearly established law 'must be 'particularized' to the facts of the case' and 'should not be defined 'at a high level of generality.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality." (internal citations omitted)). The Fourth Amendment in particular demands "[s]uch specificity" because law enforcement officers can have difficulty "determine[ing] how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation and quotations omitted).

Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Wright v. City of Ponca City*, No. 22-

6137, 2023 WL 5765848, at *5 (10th Cir. Sept. 7, 2023) (reiterating discretion under *Pearson*, 555 U.S. at 232 and "focus[ing] [the] analysis exclusively on the clearly established prong of the qualified immunity test."). In the case at hand, "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Pearson*, 555 U.S. at 237.

Turning to this analysis, Plaintiff's briefing has not shown (or even argued) that his Fourth Amendment rights that were allegedly violated are clearly established. ECFs 42, 55. As argued by Defendants' briefing, the Fourth Amendment does not unquestionably protect against aerial surveillance of private property. ECF 34 at 9–16; ECF 51 at 10; ECF 56 at 13; ECF 66 at 2 (Defs.' Notice of Suppl. Authority explaining *Dircks v. Barnes*, No. 1:21-cv-00451-JMS-MG, 2023 WL 4761662, at *9–13 (S.D. Ind. July 26, 2023) "found that the defendants were entitled to qualified immunity under qualified immunity's second prong and stated, in part, that the plaintiffs '[had] not pointed to any binding precedent addressing drones at all.'"); *see also California v. Ciraolo*, 476 U.S. 207, 215 (1986) ("The Fourth Amendment simply does not require the police traveling in the public airways at [1,000 feet] to obtain a warrant in order to observe what is visible to the naked eye."); *Florida v. Riley*, 488 U.S. 445, 451 (1989) ("Nor on the facts before us, does it make a difference for Fourth Amendment purposes that the helicopter was flying at 400 feet when the officer saw what was growing in the greenhouse through the partially open roof and sides of the structure . . . . This is not to say that an inspection of the curtilage of a house from an aircraft will always pass muster under the Fourth Amendment simply because the plane is within the navigable airspace specified by law."); *Dircks*, 2023 WL 4761662, at *10 ("[A]s the Court has already pointed out, there are "no bright-line rules about drone use under the Fourth Amendment."). Plaintiff's briefing identified no cases in which courts have held drone photography by law enforcement of the type alleged here (*i.e.*, not interfering whatsoever with Plaintiff's use or

10

enjoyment of his property) violates the Fourth Amendment, let alone a clear holding from either the Tenth Circuit or Supreme Court. ECFs 42, 55. Nor I have found any such cases. *See Toevs*, 685 F.3d at 916 ("Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."); *see also Harris*, 838 F. App'x at 342 (internal citation omitted). Ultimately, Plaintiff conceded at oral argument that Defendants Copeland, Haynes, and Nowlin are entitled to qualified immunity.

      **B.**    ***Monell* Liability (Claim Four)**

However, granting qualified immunity to individual officers based on the absence of clearly established law does not eliminate the *Monell* claim for municipal liability against Defendant Board of County Commissioners of the County of Montezuma—Claim Four. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782–83 (10th Cir. 1993) ("[A] finding of qualified immunity does not shelter a municipality from liability." (internal citations omitted)); *see also Watson v. City of Kan. City, Kan.*, 857 F.2d 690, 697 (10th Cir. 1988) ("While a government official who violates the constitution will be protected if his or her actions were reasonable in light of clearly established law and the information the official possessed when he or she acted, municipalities enjoy no such shield." (internal citation omitted)); *Owen v. City of Indep., Mo.*, 445 U.S. 622, 638 (1980) (no qualified immunity for municipalities); *Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 590 (10th Cir. 2020) (counties may not assert qualified immunity).

In *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), the Court held that plaintiffs may sue local governing bodies directly under 42 U.S.C. § 1983 for constitutional violations caused by a body's policy, practice, or custom. The alleged custom must have been "maintained with deliberate indifference to an ***almost inevitable constitutional injury***."

*Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 769 (10th Cir. 2013) (emphasis added) (internal citations omitted). Therefore, the elements of a *Monell* claim are three: (1) official "policy or custom," (2) causation, and (3) state of mind (*i.e.*, deliberate indifference). *Id.* (internal citations omitted). Here, Plaintiff describes the alleged unconstitutional policy as: "Defendant Board of County Commissioners of the County of Montezuma (hereinafter, 'Montezuma County') maintained a custom, policy, and practice of conducting illegal searches by way of operating warrantless drone searches over private property without probable cause." ECF 54 ¶ 6. As noted above, however, I could find no cases holding that a drone search under the circumstances alleged here violates the Fourth Amendment. *See supra* § I.A. Nor am I prepared to find that aerial photography such as that alleged in this case violates the Fourth Amendment. Therefore, Plaintiff has not met his burden of pleading a custom or practice that is deliberately indifferent to "an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769.

### C. Malicious Prosecution (Claim Five)

A malicious prosecution claim under Section 1983, borrowing from Colorado law, has the following elements: "(1) the defendant[s] caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant[s] acted with malice; and (5) the plaintiff sustained damages." *Handy v. Dobbin*, No. 21-1418, 2022 WL 5067710 at *3 (10th Cir. Oct. 5, 2022) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) *cert. denied*, 555 U.S. 1212 (2009)); *cf. Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022) (quoting T. Cooley, Law of Torts 180 (1880)) (abrogating in part *Wilkins*, 528 F.3d 790). It is only when a law enforcement officer makes a ***material*** misrepresentation of fact that they can be held liable for malicious prosecution. *See Calvert v. Ediger*, 415 F. App'x 80, 83 (10th Cir. 2011)

12

(internal citations omitted) (noting that most malicious prosecution claims involve not a police officer but a prosecutor); *see also Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (noting that *Pierce v. Gilchrist*, 359 F.3d 1279, 1295 (10th Cir. 2004) "conclude[ed] that 'falsification of inculpatory evidence or suppressing of exculpatory evidence' that 'was necessary to the finding of probable cause' would establish the lack of probable cause element" for a malicious prosecution claim).

Here, the SAC alleges that "Defendant Copeland intentionally misrepresented that the drone flew *outside* the *home's curtilage and property* to take still photos of the property." *Id.* ¶ 84 (emphasis in original); *cf. id.* ¶ 103. At oral argument, Plaintiff directed the Court to the following statement in the affidavit for the executed search warrant (no. 20-59): "The drone was able to fly outside the homes [*sic*] curtilage and property to take multiple still photos of the property." ECF 56-1 at 8. Fairly read, the SAC asserts that a search of Plaintiff's property by a drone violated the Fourth Amendment. *See, e.g.*, ECF 54 ¶ 76 ("Defendants' warrantless search of Mr. Tuck's property through the use of a drone violated Mr. Tuck's reasonable expectation of privacy."). This allegation does not distinguish between photographs taken by the drone while directly over his property or simply adjacent to the property. *Id.* Plaintiff alleges that if Defendant Copeland would have informed the judicial officer that the drone flew directly over his property, it would have "vitiated probable cause." *Id.* ¶ 108. But I do not find this allegation plausible. Plaintiff does not allege that the photographs here, taken from 390 feet, are materially different when taken from airspace directly above the property versus immediately adjacent to the property. ECF 54. The flight path of the drone, superimposed over Plaintiff's property lines, demonstrates that half of the drone's flight was over the property and half was not. *Id.* at 11. The relevant areas searched were Plaintiff's marijuana gardens (one was seventy feet from the house, the other fifteen feet from the

13

house), and his greenhouse (eighty feet from his house). *Id.* ¶ 24. The Court's review of the flight path shows that at least for the greenhouse, the drone was physically closer to it while outside Plaintiff's property line, and Plaintiff's house is almost equidistant from the flight path over and outside the property. *Id.* at 11.

Thus, I find Defendant Copeland did not make a material misrepresentation in the search warrant affidavit (*i.e.*, the failure to distinguish between photographs taken *over* as opposed to *adjacent to* Plaintiff's property is not material from a federal constitutional perspective). In turn, I find Plaintiff has not pleaded a plausible malicious prosecution claim.

For these reasons, I **grant** the Motion as to the three Fourth Amendment violation claims under Section 1983—Claims Three (Invalid Search Warrants/Unlawful Search against Defendant Copeland), Fourth (*Monell* claim against Defendant Board of County Commissioners of the County of Montezuma), and Five (Malicious Prosecution against all Defendants).

## II.   STATE LAW CLAIMS

This leaves Plaintiff's First and Second Claims, each brought under Colo. Rev. Stat. § 13-21-131 and Colo. Const. Art. II, Section 7 (Unlawful Entry and Search against Defendants Copeland, Haynes, and Nowlin; Invalid Search Warrants/Unlawful Search against Defendant Copeland). ECF 54 ¶¶ 181–207. Because the Court dismisses the federal law claims, the only remaining basis for retaining jurisdiction is supplemental jurisdiction. 28 U.S.C. § 1367. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law [or] . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c).

In determining whether to exercise supplemental jurisdiction, federal courts weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 (1988) (internal citation omitted). Courts have consistently found that when all federal claims have been dismissed, these factors generally weigh in favor of dismissal of the state-law claims. *Id*. ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (footnote and internal citation omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (internal citations omitted)).

In weighing "the values of judicial economy, convenience, fairness, and comity" in light of the above-cited case law, the Court elects to **decline jurisdiction** as to the remaining claims. This is especially so because of the State of Colorado's interest in determining its own law concerning the use of drones by law enforcement.

## CONCLUSION

For the above reasons, the Court **grants** Defendants' Motion for Judgment on the Pleadings as to the federal law claims (Claims Three, Four, and Five) and **declines to exercise supplemental jurisdiction** as to the remaining claims (Claims One and Two). ECF 34. Accordingly, the Court **directs** the Clerk to enter judgment in favor of Defendants as to Claims Three, Four, and Five and terminate the case.

Dated at Denver, Colorado, this 27th day of October, 2023.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge